FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2012 FEB 21 P 2: 29

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

CARVER INTERNATIONAL, INC., a
California Corporation,

        Plaintiff,

v.

DAVID J. KAPPOS, Under Secretary
of Commerce For Intellectual Property and
Director of the United States
Patent and Trademark Office, and

UNITED STATES PATENT AND
TRADEMARK OFFICE,

        Defendants.

Civil Action No. 1:12CV175
AJT/IDD

# COMPLAINT

Plaintiff, Carver International, Inc. ("Plaintiff" or "Carver Skateboards") for its Complaint against Defendants, David J. Kappos ("Kappos") in his official capacity, and the United States Patent and Trademark Office ("USPTO" or, collectively, "Defendants") states and alleges as follows:

## STATEMENT OF THE CASE

1. Plaintiff files this legal proceeding with the sole, singular goal of having its issued patent, which is U.S. Patent No. 6,793,224 ("the '224 patent") reinstated. (Attached hereto as **Exhibit "A"** is a true and correct copy of the '224 patent.)

2. On <u>November 20, 2008</u>, the '224 patent expired due to USPTO's refusal to accept late payment of a $490 administrative Maintenance Fee charged by the USPTO. Previously, Carver Skateboards took note of the Maintenance Fee due date and exercised reasonable care in the docketing of the due date for payment. However, through unusual and unexpected

1

occurrences outside of its control and despite its exercise of reasonable care, the administrative Maintenance Fee was not paid. Timely payment of the administrative Maintenance Fee was unavoidable, due to a conflux of isolated factors, involving:

    a)    the actions of its agent, the TOPE-MCKAY & ASSOCIATES firm (the "TMA firm"), which, despite its dual docketing system, which includes use of both an Excel spreadsheet and Case Tracking Software (as produced by FlexTrac, Inc.), failed to notify Carver Skateboards that the Maintenance Fee was due to be paid, such that it was not paid on or prior to its September 22, 2008, due date and was not even attempted to be paid until on or about November 1, 2010, after the TMA firm discovered that its dual docketing system had failed and the Maintenance Fee had not been paid;

    b)    the actions of Eyerick Williamson, who was the Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO") of Carver Skateboards during the relevant time period, and who was assigned with the responsibility to monitor the '224 patent, and who repeatedly informed Carver Skateboards that any and all USPTO administrative matters were handled, without making any inquiry, and who deliberately turned a blind eye to all of the administrative matters of Carver Skateboards, because he was being removed from Carver Skateboards during the relevant time period and, upon information and belief, desired the company to fail;

    c)    the actions of the USPTO, which did not send its March 31, 2008, Maintenance Fee Reminder concerning the '224 patent or its October 20, 2008, Notice of Patent Expiration of the '224 patent to Carver Skateboards, Neil Stratton (who is the sole inventor of the '224

patent) or to the TMA firm, and instead sent it to the CHRISTIE, PARKER & HALE law firm (the "CPH firm"), despite the fact that:

1) the CPH firm had previously filed an Application to Withdraw as Attorneys of Record in Pending Application ('Petition to Withdraw") from its representation of Carver Skateboards on September 15, 2002;

2) the USPTO had corresponded with the TMA firm concerning the application for the '224 patent at least as early as December 26, 2002, which is *after* the CPH firm filed its Petition to Withdraw; and,

3) the USPTO also had corresponded with "Eyerick Williamson, President, Carver Skateboards, Inc." concerning the application for the '224 patent at least as early as February 20, 2003, which also is *after* the CPH firm filed its Petition to Withdraw, and continued to correspond with Carver Skateboards, copying the TMA firm *only*,

such that neither Carver Skateboards, Stratton nor the TMA firm received either the Maintenance Fee Reminder or the Notice of Patent Expiration sent by the USPTO concerning the '224 patent;

d) the actions of the CPH firm which, upon information and belief, despite receiving the only copies of the Maintenance Fee Reminder and Notice of Patent Expiration that were sent from the USPTO to *anyone* concerning this matter, did not provide either document to Carver Skateboards, Stratton, or to the TMA firm; and,

e) the further actions of the USPTO, which accepted a June 21, 2010, Notice of Recordation of the '224 patent, which assigned the '224 patent from Carver Skateboards, Inc. to Carver International, Inc., and recorded the

3

assignment of the '224 patent on June 22, 2010, without informing Carver Skateboards, Stratton or the TMA firm that it *could not accept* the submitted assignment for recordation because the '224 patent had expired, despite its continuous written and telephonic contact with Stratton who, during this recordation process, was the Chief Executive Officer ("CEO") of Carver Skateboards. Had the USPTO done so, Carver Skateboards could have filed a Petition for Reinstatement or before September 22, 2010.

3. Had any of the TMA firm, Williamson or the CPH firm acted within the course and scope of their duties, or had the USPTO provided notification to any party other than the CPH firm, or had the USPTO even informed Stratton in June 2010 that the '224 patent had expired, Carver Skateboards undoubtedly would have paid the administrative Maintenance Fee.

4. Therefore, due to the above actions that Carver Skateboards could not avoid, the administrative Maintenance Fee was not timely paid and, on October 20, 2008, the issued '224 patent expired — not by choice, and not because Carver Skateboards desired it to expire, but rather because, under these circumstances, timely payment was unavoidable. Upon learning that its issued '224 patent had expired, Carver Skateboards immediately sought to pay the administrative fee, which was not accepted. Inequity has resulted. Carver Skateboards has exhausted all administrative appeals within the USPTO and now files the present action.

## NATURE OF ACTION

5. This is an action seeking judicial review, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 704 *et seq.*, of a decision of the Director of the USPTO and the USPTO, dated December 20, 2011, denying the Petition to accept the tendered late payment of Maintenance Fee(s) and reinstate the '224 patent, despite Plaintiff's showing that the delay in payment of the patent Maintenance Fee was unavoidable under 35 U.S.C. § 41(c)(1).

## PARTIES

6. Plaintiff Carver International is a California corporation and is engaged in the design, manufacture and sale of skateboards and accessories, having a principal place of business at 11 Sierra St., El Segundo, California 90245.

7. Defendant Kappos is the Under Secretary of Commerce for Intellectual Property at, and the Director of, the USPTO. Kappos is being named herein in his official capacity.

8. Defendant USPTO is a federal agency in the Department of Commerce. The USPTO is located at Madison Building East, 600 Dulany Street, Alexandria, Virginia 22314.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action by virtue of the APA (5 U.S.C. §§ 701 *et seq.*), federal question jurisdiction (28 U.S.C. §§ 1331 and 1361), the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), the United States Patent Laws (28 U.S.C. § 1338(a)), the America Invents Act Sec. 9(a), and this Court's equitable powers.

10. The USPTO is located in Alexandria, Virginia. Venue is proper in this Judicial District and Division pursuant to 5 U.S.C. §§ 702-706, 35 U.S.C. § 1(b), 28 U.S.C. § 1391(e), and Local Rule 3(c).

11. Plaintiff has standing to maintain this action pursuant to the APA, as it is the party who has suffered a legal wrong and has been adversely affected by final agency action, as complained of herein.

12. There exists an actual, justiciable case or controversy between Plaintiff and the USPTO, as to which Plaintiff seeks: (i) a declaration of rights by this Court; and, (ii) injunctive relief against the USPTO, including:

    a)     prohibiting the USPTO from: (i) continuing to refuse acceptance of a delayed Maintenance Fee payment on the '224 patent; and, (ii) continuing to deny reinstatement of the '224 patent, all to Plaintiff's irreparable injury, as complained of herein; and,

      b)      compelling and/or ordering the USPTO to reinstate the '224 patent after acceptance of Plaintiff's payment of the requisite Maintenance Fees.

13. Sovereign immunity preventing suits against the officers or employees of the United States is waived in this action pursuant to the provisions of the APA, 5 U.S.C. § 702.

## STATEMENT OF FACTS

### Carver International

14. Carver Skateboards is a well-known skateboard industry leader, pioneering "surf-skating." The foundation of Carver Skateboards is based upon the '224 patent, and it has grown into an international manufacturer of its unique skateboards from its El Segundo, California location. It employs more than 15 full-time workers and grosses more than $1 million dollars per year.

15. Stratton, a Venice Beach, California-based surfer, spent several years developing a skateboarding wheel axel that allows the front-end wheels to turn and pivot so that its riders feel as if they are skateboarding on a surfboard. (*See* photographic graphic depiction at right.) Stratton created hundreds of drawings and dozens of prototypes to achieve this "feel". When he had perfected his prototype, he filed his patent application and subsequently assigned his entire right, title and interest in the invention to Carver Skateboards.

16. The technology embodied in the '224 patent provides an improved skateboard truck (or axel). The improved skateboard truck comprises an axle having a pair of wheels mounted on opposite ends. There is a skateboard truck on the front of the skateboard that allows the front wheels to laterally sway from side-to-side. There also is a skateboard truck on the back of the skateboard which also allows the back wheels to turn, but not as sharply as the front wheels. Two wheels are attached to each skateboard truck, one wheel per side. Each skateboard truck provides a combination of: (1) adjustable lateral stability, and (2) enhanced skateboard turning abilities.



17. Since the early 2000s, Carver Skateboards has worked with several renowned surfers and skateboarders, including: legendary surfer Laird Hamilton ("Hamilton"), pictured at right surf-skating on a Carver Skateboard; Carlsbad, California-based competitive surfer Taylor Knox; Japanese pro surfer-turned-distributor Aki Takahama; and, Renowned Japanese pro-surfer Mineto Ushikoshi ("Ushikoshi").

18. Hamilton immediately connected with the way the Carver Skateboards "surfed". Carver Skateboards are his perfect surf trainer to stay in shape for riding the 50-foot plus waves of (Jaws) Peahi, Hawaii. An innovator himself, from tow-in technology to his revolutionary Foil Board, Hamilton recognized this breakthrough in skating and saw how it dovetailed with his own cutting edge pursuits. Since then, Carver has proudly offered numerous Hamilton signature models and continues to work with this legendary waterman to develop his quiver of land-surfing boards.

19. Japanese pro surfer-turned-distributor Aki Takahama and pro-surfer Ushikoshi also felt the deep relationship to surfing the Carver Skateboards provided them. Ushikoshi even joined the Carver Skateboards team. Ushikoshi helped design his own line of decks and graphics in conjunction with his signature Carver Skateboards brand, further adding to the development of the United States-Japanese surf-skate style.

20. Now, Carver Skateboards sells thousands of skateboards within the United States and across the Pacific Rim and riders have developed and continue to develop their own distinctive style of surf-skating.

21. The technology embodied in the '224 patent *is* Carver Skateboards. Numerous companies have copied Stratton's invention. Carver Skateboards desires to protect and must protect its primary corporate asset and stop others from copying its design, so as to: (1) ensure

the safety of surfskaters everywhere, such that they are riding the proper skateboards and not riding knock-off skateboard products, which may endanger the riders, and, (2) to further protect its corporate assets and employees, such that its business continues to grow and remains profitable.

### The '224 Patent

22. On or about March 8, 2001, Application No. 09/801,536 ("the '536 application") was filed with the USPTO, naming Stratton as the sole inventor.

23. On or about March 8, 2001, Stratton assigned his rights to the invention claimed in the '536 application to Carver Skateboards, Inc. Stratton was a shareholder of Carver Skateboards at that time.

24. The '536 application was filed by the CPH firm, which is located at 655 North Central Avenue, Suite 2300, Glendale, California 91203-1445.

25. Williamson was the CEO and CFO of Carver Skateboards at the time the '536 application was filed.

26. On behalf of Carver Skateboards, the assignee, and as agreed by both Stratton and Williamson, Williamson, in his capacity as the CEO and CFO of Carver Skateboards, was responsible for paying the fees associated with the '536 application and any patent that issued therefrom. Stratton looked to, and justifiably relied upon, Carver Skateboards (through its CEO and CFO, Williamson) for payment of the USPTO administrative Maintenance Fee.

27. On or about September 15, 2002, the CPH firm filed a petition to withdraw as counsel, redirecting all future correspondence to Carver Skateboards, and the USPTO began sending its notices to Carver Skateboards.

28. On or about November 28, 2002, the TMA firm began assisting Carver Skateboards with the prosecution of the '536 application. The TMA firm is located at 30765 Pacific Coast Highway, Suite 420, Malibu, California 90265.

29. On September 21, 2004, the USPTO issued the '224 patent, entitled "Truck for Skateboards," to Carver Skateboards, Inc., the assignee as identified on the issued patent.

30.     The first administrative maintenance fee for the '224 patent was to be paid from September 21, 2007 to September 22, 2008.

31.     The TMA firm uses a redundant procedure for docketing. The redundant procedure includes use of both an Excel spreadsheet and Case Tracking Software (as produced by FlexTrac, Inc.), collectively referred to as the Docketing System. The issuance of the '224 patent was entered into the Docketing System and managed by counsel employed by the TMA firm. However, the client information was improperly entered into the Docketing System. On February 29, 2008, the TMA firm sent a maintenance fee reminder to an improper address for Carver Skateboards/Stratton. Because the Docketing System had the wrong address, Carver Skateboards/Stratton never received the maintenance fee reminder. The TMA firm did not initiate any further contact with Carver Skateboards/Stratton to ensure that Carver Skateboards/Stratton received the maintenance fee reminder and paid the $490 administrative Maintenance Fee to the USPTO.

32.     On or about March 31, 2008, the USPTO mailed a "Maintenance Fee Reminder" to the CPH firm, and not to Carver Skateboards or to the TMA firm, even though: a) the CPH firm filed a petition to withdraw as counsel for Carver Skateboards on September 15, 2002, redirecting all future correspondence to Carver Skateboards; b) the TMA firm had appeared at the USPTO at least as early as December 26, 2002, on behalf of Carver Skateboards, and the TMA firm continued to represent Carver Skateboards in front of the USPTO; and, c) the USPTO corresponded with "Eyerick Williamson, President, Carver Skateboards, Inc." at least as early as February 20, 2003, while copying the TMA firm on its correspondence.

33.     On information and belief, the CPH firm did not send the "Maintenance Fee Reminder" to Carver Skateboards, Stratton, or to the TMA firm.

34.     Shortly prior to June 1, 2008, during the time in which the administrative Maintenance Fee could have been timely paid, Carver Skateboards decided to remove Williamson from its business management and operations. Stratton therefore began the process

9

to dissolve Carver Skateboards and began to negotiate the division of the company's assets with Williamson.

35. During the dissolution negotiations, Williamson, who was assigned with the responsibility to monitor the '224 patent, and who repeatedly informed Carver Skateboards that any and all USPTO administrative matters were handled, without making any inquiry, deliberately turned a blind eye to all of the administrative matters for Carver Skateboards, because he was being removed from Carver Skateboards during the relevant time period and, upon information and belief, desired the company to fail.

36. On or about October 20, 2008, the USPTO mailed a "Notice of Patent Expiration" to the CPH firm, even though: a) the CPH firm filed a petition to withdraw as counsel for Carver Skateboards on September 15, 2002, redirecting all future correspondence to Williamson; b) the TMA firm had appeared at the USPTO at least as early as December 26, 2002, on behalf of Carver Skateboards, and the TMA firm continued to represent Carver Skateboards in front of the USPTO; and, c) the USPTO corresponded with "Eyerick Williamson, President, Carver Skateboards, Inc." at least as early as February 20, 2003, while copying the TMA firm on its correspondence.

37. Upon information and belief, the CPH firm, despite having received the only copy of the Notice of Patent Expiration sent from the USPTO, as well as the earlier Maintenance Fee Reminder sent by the USPTO concerning this matter, *still* did not perceive a problem, and *still* did not provide the Notice of Patent Expiration to Carver Skateboards, Stratton, or to the TMA firm.

38. Importantly, had the TMA firm received the March 31, 2008 Maintenance Fee Reminder sent by the USPTO concerning this matter or the October 20, 2008 Notice of Patent Expiration, it would have realized that its Docketing System had failed and would have informed Carver Skateboards that the administrative Maintenance Fee for the '224 patent had not been timely paid. However, it did not receive either document, and thus had no reason to believe that its Docketing System had failed.

10

39. On or about June 21, 2010, believing that the '224 patent was properly maintained and had not expired, Carver Skateboards filed an assignment with the USPTO, with "Carver Skateboards, Inc." as the assignor and "Carver International, Inc." as the assignee. Prior to this filing, Stratton had repeated, numerous written and telephonic contact with the USPTO concerning the filing of the assignment. At no time during this process did the USPTO inform Carver Skateboards, Stratton or the TMA firm that it could not accept the submitted assignment for recordation because the '224 patent had expired. Instead, on June 22, 2010, the USPTO recorded the assignment. Had the USPTO informed Carver Skateboards/Stratton that the '224 patent had expired, Carver Skateboards could have filed a Petition for Reinstatement or before September 22, 2010, as provided for by 37 C.F.R. §1.378(c).

### Petitions to Reinstate the '224 Patent

40. On November 1, 2010, Carver Skateboards filed its Petition to Revive the '224 patent with the USPTO ("First Petition").

41. On or about May 25, 2011, the USPTO dismissed the First Petition.

42. On or about July 25, 2011, Carver Skateboards filed a Renewed Petition with the USPTO ("Renewed Petition").

43. On or about December 20, 2011, the USPTO dismissed the Renewed Petition, noting that "this decision is a final agency action within the meaning of 5 U.S.C. § 704 for purposes of seeking judicial review. . . . [N]o further consideration will be given to this matter."

### COUNT I

### (Violation of the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*)

44. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

45. Throughout the petition process, the USPTO acted in a manner that was arbitrary, capricious, and/or otherwise contrary to law and in excess of statutory authority, all in violation of 5 U.S.C. § 706(2), including, among other conduct adversely affecting Plaintiff, the following:

a) Ignoring that since at least as early as <u>March 8, 2001</u>, Carver Skateboards, and not Stratton, was the assignee of the '224 patent and was responsible for payment of fees associated with it;

b) Ignoring that the TMA firm's Docketing System had failed and Carver Skateboards was not notified that an administrative Maintenance Fee was due to be paid;

c) Ignoring that Plaintiff looked to Williamson, its then- CEO and CFO, to pay the fees associated with the '224 patent, including the maintenance fees (Cal. Corp. Code §§ 204 and 309);

d) Ignoring that Carver Skateboards had a right to rely on Williamson's representations and assurances, and justifiably did so;

e) Ignoring that Williamson deliberately jeopardized the '224 patent through his inattention to its continued maintenance, because he was being forced out of Carver Skateboards and, upon information and belief, desired the company to fail;

f) Ignoring that the USPTO did not send either the Maintenance Fee Reminder or Notice of Patent Expiration to Carver Skateboards, Williamson, Stratton or the TMA firm, and instead sent it to the CPH firm, despite that: (1) the CPH firm had previously filed a petition to withdraw from tis representation of Carver Skateboards; (2) the USPTO had corresponded with the TMA firm after the CPH firm filed its petition to withdraw; and, (3) the USPTO also had corresponded with Carver Skateboards, copying the TMA firm, also after the CPH firm filed its petition to withdraw, such that neither Carver Skateboards, Stratton or the TMA firm received either the Maintenance Fee Reminder or Notice of Patent Expiration;

g) Ignoring that, on <u>June 22, 2010</u>, the USPTO issued a Notice of Recordation for the '224 patent, when it could not do so, because the patent had expired;

h) Ignoring that, on and prior to <u>June 21, 2010</u>, Stratton had repeated, numerous written and telephonic contact with the USPTO concerning the filing of the assignment. At no time during this process did the USPTO inform Carver Skateboards, Stratton or the TMA firm that it could not accept the submitted assignment for recordation because the '224 patent had expired;

i) Ignoring that, had the USPTO informed Carver Skateboards/Stratton that the '224 patent had expired during this <u>June 2010</u> timeframe, Carver Skateboards could have filed a Petition for Reinstatement or before <u>September 22, 2010</u>, which it had a statutory right to do;

j) Ignoring that given the aforementioned facts, Carver Skateboards exercised the requisite diligence that is generally used and observed by prudent and careful men in relation to their most important business;

k) Applying a shifting standard of proof throughout the Petitions and responses in support, setting a moving target and finding new grounds on which to deny or ignore Plaintiff's responses and requests; and,

l) Concluding, in effect, that unavoidable delay can never occur even though affirmative misrepresentations and assurances were made by a duly-appointed representative of the entity responsible for making the maintenance payments, and even if there was justifiable reliance on such representations and assurances during the time period when the maintenance fees were due.

46. The USPTO's denial of the First and Renewed Petitions (the "Petitions") has damaged Plaintiff irreparably. Such damage will continue unless and until the USPTO rulings are set aside and the USPTO is ordered to reinstate the '224 patent by this Court.

47. Plaintiff has exhausted its administrative remedies, or in the alternative, pursuit of any further administrative remedies is futile.

48. Plaintiff has no other adequate remedy at law.

49. The USPTO's denials of the Petitions are ripe for review because the issues tendered are appropriate for legal resolution and Plaintiff will suffer hardship if relief is denied.

50. Plaintiff is entitled to a reinstatement of the '224 patent upon tender of the late maintenance fee(s), together with all other amounts that may be due pursuant to 35 U.S.C. § 41(c)(1).

## COUNT II

### (Declaratory Judgment Reinstating the '224 Patent)

51. Plaintiff repeats and realleges the foregoing paragraphs as though set forth fully herein.

52. The USPTO's denials of the Petitions are contrary to the law.

53. The USPTO's denial of the Petitions has damaged the Plaintiff irreparably. Such damage will continue unless and until the USPTO's rulings are set aside and the USPTO is ordered to reinstate the '224 patent by this Court.

54. Plaintiff has exhausted its administrative remedies, or in the alternative, pursuit of any further administrative remedies is futile.

55. Plaintiff has no other adequate remedy at law.

56. The USPTO's denials of the Petitions are ripe for review because the issues tendered are appropriate for legal resolution and Plaintiff will suffer hardship if relief is denied.

57. There exists an actual, justiciable case or controversy between Plaintiff and the PTO, as to which Plaintiff seeks: (i) a declaration of rights by this Court; and (ii) injunctive relief against the USPTO, including,

    a)    prohibiting the USPTO from: (i) continuing to refuse acceptance of a delayed maintenance fee payment on the '224 patent; and, (ii) continuing to deny reinstatement of the '224 patent, all to Plaintiff's irreparable injury, as complained of herein; and,

    b)    compelling and/or ordering the USPTO to reinstate the '224 patent after acceptance of Plaintiff's payment of the requisite maintenance fees.

58. Plaintiff is entitled to a declaratory judgment that: (i) the delay in the payment of the maintenance fee was unavoidable under 35 U.S.C. § 41(c)(1); and, (ii) the USPTO's denials of the First and Renewed Petitions are arbitrary, capricious, and/or otherwise contrary to law and in excess of statutory authority, in violation of 5 U.S.C. § 706(2).

## COUNT III

### (Writ of Mandamus)

59. Plaintiff repeats and realleges the foregoing paragraphs as though set forth fully herein.

60. Plaintiff has a clear and indisputable right to provide payment for any and all administrative Maintenance Fees owing and due to the USPTO concerning the '224 patent.

61. Defendants have a clear duty to apply and follow their own rules in reviewing the First and Renewed Petitions, and to allow the Plaintiff to provide any and all administrative Maintenance Fee payments to the USPTO concerning the '224 patent and have failed to do so.

62. The act requested is an official act or duty of the USPTO.

63. Plaintiff will have no adequate alternative relief to attain the relief it desires if the relief it has sought under Counts I and II is not granted.

64. The issuance of the writ will effect right and justice in the circumstances.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A. Issue a declaratory judgment that the delay in the payment of the maintenance fee was unavoidable under 35 U.S.C. § 41(c)(1);

B. Issue a declaratory judgment that the USPTO's denials of the First and Renewed Petitions are arbitrary, capricious, and/or otherwise contrary to law and in excess of statutory authority, in violation of 5 U.S.C. § 706(2);

C. Enter an order requiring the PTO to promptly: (i) expressly withdraw its denials of the First and Renewed Petitions; (ii) accept late payment of the maintenance fees; and, (iii) reinstate the '224 patent.

D. Grant a writ of mandamus to compel the Director to promptly accept the payment of the unavoidably delayed maintenance fee and any surcharge, on Plaintiff's showing that the delay was unavoidable and, further, to compel the Director to reinstate the '224 patent; and,

E. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: February 21, 2012

_____
Damon W.D. Wright, Virginia Bar No. 40319
VENABLE LLP
575 7th Street, NW
Washington, DC 20004-1601
(202) 344-4000 (phone)
(202) 344-8300 (fax)
dwdwright@venable.com

LEWIS BRISBOIS BISGAARD & SMITH LLP
THOMAS J. SPEISS, III, SB# 200949
E-Mail: tspeiss@lbbslaw.com
JON E. HOKANSON, SB# 118829
E-Mail: hokanson@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.599.7815
Facsimile: 213.250.7900

*Counsel for Plaintiff Carver International, Inc.*